James Rutherford, of Scotland, a native-born subject of the king of Great Britain, removed to the United States in 1781, and continued to reside therein until 1819, when he died, seized in fee simple of the lands described in plaintiff's declaration, intestate, without issue and without having ever been married, leaving him surviving brothers and sisters residing in Great Britain, natural-born subjects of the king of the kingdom, who are not citizens of the United States, but are aliens incapable of inheriting real estates. The said James left *Page 146 
also surviving him one Walter B. Rutherford, a nephew of the said James, and son of one of the before-mentioned brothers of the said James; the said Walter is an alien, born in Great Britain, now residing in this State, but has never been authorized. The lessors of the plaintiff are the children of the said Walter B. Rutherford, and are natural-born citizens of the United States, and the said lessors of the plaintiff are the only persons of kin to the said James who are citizens of the United States, or any of them. Catherine one of the lessors of the plaintiff, was born before the death of said James; the others were born since. The jury further find that the defendant is in possession of the premises as a tenant under the trustees of the University of North Carolina, who claim the land as escheated property. Badger, J., who presided, gave judgment for the defendant, and plaintiff appealed to this Court.
(275) The circumstances of this case, and the arguments addressed to the Court render it necessary, in my apprehension, to consider two questions: (1) Whether the title of the lessors of the plaintiff is valid, independently of Laws 1801, ch. 575; and if it be not valid, without the aid of that act; then, (2) Whether that act is repealed by the Laws of 1808, ch. 739. The second section of the first act provides that where any person shall die seized of real estate of inheritance in this State, leaving descendants, or other relations, citizens of the United States, who would according to law inherit were all the nearer descendants or relations extinct, but who, according to the now existing laws, cannot inherit, because there may be others who, if citizens, would be entitled to inherit, but, being aliens, cannot hold lands in this State, whereby such estate would escheat; in such case the nearest descendant or relation of the deceased, being a citizen of the (276) United States, shall inherit. The lessors of the plaintiff are the grand-nephew and nieces of James Rutherford, the person last seized of the land in controversy; and in claiming as heirs to him they must unavoidably derive their title through their father, W. B. Rutherford, who is an alien. Upon common law principles, this would form an insuperable impediment to their right, for in immediate descents a disability by alienism, not only in the parties, but in any intermediate ancestor, through and by whom the descent is made, will prevent it taking effect. Thus, if the son of an alien be a citizen, he cannot inherit to his grandfather, nor to his uncle, because he must claim through his father, who was not inheritable. But, where a person does not so claim, *Page 147 
by right of representation through an alien, it is no obstacle to the descent to him that the nearest heir is an alien; as where there are three brothers, all aliens, and the two youngest were naturalized and the eldest had issue, then the third brother died, it was adjudged that the land could not descend to the eldest brother or to his issue, because he was incapable himself, and his issue cannot claim by representation; therefore, it shall descend to the second brother. 3 Salk., 130. On this principle and distinction it was held, in the case cited from 4 Wheaton, that when a person dies leaving issue who are aliens, the latter are not deemed his heirs at law, for they have no inheritable blood, and the estate descends in the same manner as if no such alien issue were in existence. As the claimants in that case were the nieces of the person last seized, who was a citizen but whose issue were all aliens, and as the ancestor of the claimant was a citizen, it was not necessary to the decision of the cause to state the alternative branch of the proposition, and declare how the law was where a person claimed through an alien. That case would be an authority for the present, provided J. Rutherford had left an alien brother, and a nephew citizen, whose father had also (277) been a citizen; the alien brother would not obstruct the descent to the nephew, but would be overlooked, or set aside in his favor, although nearer in degree. The distinction between the failure of hereditary blood by reason of alienism and by means of attainder, showing that the next heir will take in the first instance, but not in the last, is stated in Co. Lit., 8a. But it is more perspicuously summed up in the law of forfeiture (p. 72). "When a man was not capable of civil right by nature, as an alien born and never naturalized, being unknown to the law, he was excluded from inheriting, and the next of kin within the allegiance who did not claim under him was admitted; or when he had incurred civil disabilities by his own voluntary act, not criminal, as one who entered into a religion or abjured the realm, he was taken to have undergone a civil death, and the next in course of descent entered. But when he is attained of treason or felony, the law will not pass him over, and marks him out in rei exemplumet infamiam. Hence it is that though he was never in possession, nor those who claim under him more capable of inheriting than he by reason of the consequential disability arising from the attainder of the ancestor, yet the estate will be interrupted in its course to the collateral, and escheat. Reasons of political expediency may be deduced from the structure of peculiar governments for this distinction. But in the view of reason and justice the estate ought to go to the next collateral branch in the case of attainder, as well as in that of alienism, since it is not necessary for the collateral to derive this title in either case from the disqualified person, but may make it from a common ancestor. It seems to me to follow incontestibly that the *Page 148 
act of 1801, before cited, bears distinctly on the case, and if it be repealed the land has escheated. Secondly: The act was made for the purpose of regulating descents in certain cases, and is conceived in a spirit of justice applicable to any system of descent, and founded on a policy (278) that is permanent and universal; for whether primogeniture prevail, or a distribution among all the children, it is equally equitable in principle and conducive to the welfare of the republic that the title by escheat should not take place while there are any relations of the deceased who are members of the State; that it should not prevail over the claims of a window. The act of 1808, which it is agreed has operated a repeal of the first, establishes certain canons of descent, which must prevail whenever they are inconsistent with any former regulation on the same subject. Its design was to trace the course of descent according to the degrees of relationship in which the parties stood to the person last seized, leaving all the qualifications and disqualifications to be ascertained by the existing laws. None of these enter into the purview of the act; they are settled by other principles, and depend upon a distinct policy. The common law, modified as it has been by several acts, must be resorted to to form a construction upon every part. Deprived of this essential aid, we shall be met by difficulties and absurdities at every step we take. The first canon provides that inheritance shall lineally descend to the issue of the person last seized. When we inquire, What issue? the common law answers that they must be citizens; but the act construed without this aid would make aliens inheritable. The common law would add, the heirs must also be legitimate; but an act passed in 1799 makes natural children inheritable to their mother in certain cases, and to each other. Who can believe that the act of 1808 designed to repeal that law? Again, must the issue be in full life at the death of the ancestor. The act itself does not instruct us, but the common law answers that posthumous and after-born children are entitled to inherit. It appears to me that the two acts are perfectly reconcilable with each other, and that to construe the last a repeal of the former one would do manifest violence to the intent of the Legislature, who, by their (279) express declaration repealed only such laws as come within the meaning and purview of the act of 1808. I think the act of 1801 comes within neither, and the plaintiffs are entitled to judgment.